# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT GREENEVILLE

| | | |
|---|---|---|
| **GEORGE RAUDENBUSH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 2:14-CV-295-JRG-MCLC** |
| **v.** | ) | **JURY DEMAND** |
| | ) | **JUDGE GREER** |
| **SHARON TAYLOR, et al.,** | ) | **MAGISTRATE JUDGE CORKER** |
| | ) | |
| **Defendants.** | ) | |

## PROPOSED FINAL PRETRIAL ORDER

The parties, by and through counsel, submit the following Proposed Final Pretrial Order.

1.  **JURISDICTION:**  The subject matter jurisdiction of the Court has been invoked pursuant to 28 U.S.C. § 1331, 1343(a)(3), § 1367, and 42 U.S.C. § 1983

2.  **PLEADINGS AND PENDING MOTIONS:**  Defendants have filed two (2) motions which remain currently pending and unresolved: 1) a Motion for Summary Judgment filed November 27, 2016 (Docket Entry 79) and a Motion to Dismiss for Lack of Prosecution filed July 10, 2017 (Docket Entry 91).

The pleadings are amended to conform to this Agreed Pretrial Order.

3.  **SUMMARY OF PLAINTIFF'S THEORY:**

a)  Misty Gregg violated Mr. Raudenbush's 8th Amendment rights, made applicable to the State pursuant to the 14th Amendment, by maliciously punishing Mr. Raudenbush by transferring him to a maximum-security unit which she knew to be "definitely" violent.

b)  The punishment meted out by Ms. Gregg was in response to Mr. Raudenbush simply making a statement to her explaining that he was the victim rather than the aggressor in a scuffle with another inmate.

c)      Mr. Raudenbush was not punished by Ms. Gregg for failure to accept a work sanction because no work sanction was ever offered to Mr. Raudenbush.

d)      Kevin Hampton failed to protect Mr. Raudenbush from a substantial threat of physical harm, in violation of the 8th Amendment, made applicable to the State pursuant to the 14th Amendment, when he refused to take any action to protect Mr. Raudenbush from the transfer to the maximum-security unit, which he knew to be replete with violence, and in disregard of his actual awareness that Mr. Raudenbush was particularly vulnerable to a substantial risk of serious harm in the maximum-security unit.

e)      Jesse Gregg violated Mr. Raudenbush's 8th Amendment rights, made applicable to the State pursuant to the 14th Amendment, in that he was aware of temporal attacks on Mr. Raudenbush, had actual notice of multiple threats made by inmate House, knew there was a substantial risk that Mr. Raudenbush was going to be further attacked, and knew there was a substantial risk of serious harm to Mr. Raudenbush.

f)      Officer Chance violated Mr. Raudenbush's 8th Amendment rights, made applicable to the State pursuant to the 14th Amendment, in that he had actual notice of multiple direct threats against Mr. Raudenbush by inmate House, yet did nothing to protect Mr. Raudenbush from what Officer Chance knew to be a substantial risk of serious harm to Mr. Raudenbush.

g)      Officer Lewis violated Mr. Raudenbush's 8th Amendment rights, made applicable to the State pursuant to the 14th Amendment, in that he had actual notice of multiple direct threats against Mr. Raudenbush inmate House, yet did nothing to protect Mr. Raudenbush from what he knew to be a substantial risk of serious harm to Mr. Raudenbush.

h)      Warden Taylor violated Mr. Raudenbush's 8th Amendment rights, made applicable to the State pursuant to the 14th Amendment, in that despite actual notice of a substantial risk of serious harm to Mr. Raudenbush, failed to protect him.

i)      Mr. Raudenbush was violently attacked by inmate House on September 25, 2013 as the direct and deliberate failure of defendants Gregg, Chance, Lewis, and Taylor to protect Mr. Raudenbush from a substantial risk of serious harm.

4.      **SUMMARY OF DEFENDANTS' THEORIES:**

a)      Defendant Misty Gregg's only involvement in any of the allegations in the instant Complaint are as follows: on or about September 20, 2013, after Plaintiff Raudenbush was involved in a physical altercation with another inmate in violation of TDOC policy, Defendant Misty Gregg was required to take corrective action. Per policy, she offered each involved inmate a "work sanction" – an informal punishment (e.g., physical labor, cleaning a bathroom, etc.) which would allow the inmate to avoid a formal disciplinary write-up. While the other inmate accepted this offer, Plaintiff Raudenbush refused. Defendant Misty Gregg then notified a supervisor, who ordered Defendant Gregg, per policy, to both initiate a formal disciplinary write-up and move Raudenbush out of the "annex" and onto the main compound. Defendant Misty Gregg had no personal power or authority to initiate a transfer of any inmate. The main compound unit to which Raudenbush was transferred was not a maximum-security unit and the unit to which he was transferred was no more violent than any other unit in the main compound.

b)      Defendant Misty Gregg did not mete out punishment; she notified a superior that Plaintiff Raudenbush had been involved in an altercation and thereafter refused a work sanction. Defendant Misty Gregg did not have power or authority to either punish or transfer Plaintiff. Any such decision was made by her supervisor, who is not a Defendant.

c)      Both Plaintiff Raudenbush and the other involved inmate were offered work sanctions. A work sanction is specifically intended to permit an inmate to avoid formal disciplinary action. Plaintiff Raudenbush was not punished for failure to accept a work sanction, but his refusal to accept the work sanction left prison officials with no choice but to initiate disciplinary actions,

which would then require his removal from the annex, which is a privilege for inmates without disciplinary problems.

d)      The only allegations as to Defendant Keven Hampton in the instant Complaint are that he did not intercede in the transfer of Plaintiff Raudenbush to the main compound. He did not initiate the transfer. Raudenbush was not transferred to a maximum-security unit – in fact, his inmate was medium security, and he remained classified as minimum security. The main compound is, in fact, the main compound of the prison, it is a general population unit with different classifications of security present, and the unit to which Raudenbush was transferred is no different nor more violent than any other unit at the prison. Defendant Hampton had no "actual awareness" that Raudenbush was "particularly vulnerable," nor was Plaintiff Raudenbush any more vulnerable than any other inmate in general population.

e)      At no time was Defendant Jesse Gregg made aware of either threats or attacks against Plaintiff Raudenbush by inmate House. At no time was Defendant Jesse Gregg, in any manner, given any form of notice, implied or actual, as to any threats against Raudenbush from inmate House, or from any other inmate. Defendant Jesse Gregg had no knowledge of any particular risk or hazard of harm to Plaintiff Raudenbush.

f)      At no time was Defendant Jeffrey Chance made aware of either threats or attacks against Plaintiff Raudenbush by inmate House. At no time was Defendant Jesse Gregg, in any manner, given any form of notice, implied or actual, as to any threats against Raudenbush from inmate House, or from any other inmate. Defendant Jesse Gregg had no knowledge of any particular risk or hazard of harm to Plaintiff Raudenbush.

g)      No summons was ever issued or executed as to any Defendant Lewis.

h)      The now deceased defendant and former Warden Sharon Taylor had no prior notice of any specific or unusual risk of harm to Plaintiff Raudenbush. Plaintiff Raudenbush did draft one

(1) letter to then Warden Taylor, said letter dated September 24, 2013, the day prior to the assault. There is no evidence she ever received the letter, it is highly improbable that said letter could have reached her prior to the assault at approximately 6:00 a.m. the day after the letter was dated, and the letter itself make no mention whatsoever of inmate House.

i)　　　Defendants Gregg, Chance, Lewis, and Taylor had no prior notice, of any kind, of any particular, specific, or unusual level of threat to Plaintiff Raudenbush, thus they neither had a legal duty nor any practically feasible means to either predict the assault on Plaintiff Raudenbush or protect him from said assault. Moreover, the allegations as stated in the Complaint and herein do not remotely approach the legal standard necessary to establish a constitutional violation for failure to protect.

　　　5.　　**ISSUES TO BE SUBMITTED TO THE JURY:**

a)　　　Did the actions and/or omissions of the Defendants, as alleged herein and in the Complaint, as amended, amount to cruel and unusual punishment under the 8th and 14th amendments to the U.S. Constitution, made actionable pursuant to 42 U.S.C. § 1983?

b)　　　Did the actions and/or omissions of the Defendants, as alleged herein and in the Complaint, as amended, amount to intentional infliction of emotional distress?

c)　　　Did the actions and/or omissions of the Defendants, as alleged herein and in the Complaint, as amended, amount to assault and battery?

d)　　　If Mr. Raudenbush prevails on one or more of his claims, is he entitled to compensatory damages?

e)　　　If Mr. Raudenbush prevails on one or more of his claims, is he entitled to punitive damages?

f)　　　If Mr. Raudenbush prevails on his claim under 42 U.S.C. § 1983, is the Plaintiff entitled to his attorney's fees, costs, and discretionary costs pursuant to 42 U.S.C. § 1988?

6.    **DISPUTED ISSUES OF LAW:**  There is a disputed issue of law as to whether the applicable statute of limitations bars the Plaintiff's claims, in whole or in part.  The Defendants contend that the Plaintiff's claims concerning conduct prior to September 25, 2013 are barred by the applicable statute of limitations.  The Plaintiff disputes that his claims are barred by the applicable statute of limitations, creating a dispute of law as to how the statute of limitations is to be interpreted and applied.  This dispute is briefed in the Defendants' motion for summary judgment filings and in the filings of the Plaintiff in response thereto.

7.    **STIPULATIONS OF FACT:**  The parties stipulate to the following facts:

a)    As the result of convictions for, *inter alia,* felony evading arrest and reckless endangerment, said convictions arising from an incident which occurred in December 2010, Mr. Raudenbush was sentenced to four (4) years in the custody of the Tennessee Department of Corrections; he served approximately two and one-half (2 ½) years of that sentence.

b)    The Plaintiff served his sentence at the South Central Correctional Facility, the Morgan County Correctional Complex, and finally at the Northeast Correctional Complex. ("NECX") in Mountain City, Tennessee.

c)    The Plaintiff was classified as a minimum-security inmate at all times relevant to the Complaint and throughout his period of custody at NECX.

d)    Mr. Raudenbush's cellmate at the "compound" at NECX was inmate Christian. On September 25, 2013, at or shortly before 6:00 a.m., Plaintiff Raudenbush was assaulted by Alex House, a NECX inmate.

e)    According to medical staff at the NECX medical facility who treated Plaintiff after the September 25, 2013 assault, Plaintiff Raudenbush suffered only "a little shiner." There will be no other medical evidence presented at trial as to any other injury.

f)     Plaintiff Raudenbush received no medical treatment as a result of the September 25, 2013 inmate assault and the NECX medical staff performed no medical tests in regards to Plaintiff's injuries.

g)     Following the September 25, 2013 assault, inmate House was charged with "assault upon offender with minor injuries." He faced no other charges.

h)     Plaintiff Raudenbush alleges a corrections officer sprayed him and inmate House with mace or pepper spray, but Plaintiff Raudenbush is unable to identify the corrections officer allegedly involved.

i)     Plaintiff Raudenbush alleges corrections officers witnessed the assault upon him by inmate House but Plaintiff is unable to identify any of those alleged witnesses.

j)     The sole and only basis for Plaintiff claims against Defendant Harold Angel is that Angel was a unit manager at NECX responsible for employment, training, and supervision of officers and employees. Plaintiff alleges no personal involvement on the part of Defendant Angel.

k)     The sole and only basis for Plaintiff claims against Defendant Captain Randy Lee is that Lee was an operations Captain at NECX responsible for employment, training, and supervision of officers and employees. Plaintiff alleges no personal involvement on the part of Defendant Lee.

8.     **NOVEL OR UNUSUAL QUESTIONS OF LAW OR EVIDENCE:**  None.

9.     **POSSIBILITY OF SETTLEMENT:**  Poor.

10.     **MISCELLANEOUS MATTERS:** The parties anticipate the trial of this action to last approximately two (2) days.

ENTER:

_____

J. RONNIE GREER
United States District Court Judge

**APPROVED FOR ENTRY:**

HERBERT H. SLATERY, III
Attorney General and Reporter

*/s/Eric A. Fuller*
ERIC A. FULLER, BPR 029934
Assistant Attorney General
*Attorney for the Defendants*
P. O. Box 20207
Nashville, TN 37202
(615) 532-2500

*/s/ Keith Edmiston*
Keith Edmiston, BPR 018366
*Attorney for the Plaintiff*
EDMISTON BIRDWELL, PLLC
7031 Middlebrook Pike
Knoxville, TN 37930-0782
(865) 383-0357

*/s/Kimberly Cambron*
Kimberly Cambron, MI70317
*Attorney for the Plaintiff*
1400 N. Sixth Ave., Suite C-3
Knoxville, TN 37917
(865) 850-2898