UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| GEORGE RAUDENBUSH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:14-CV-295 |
| | ) |
| SHARON TAYLOR, *et al.*, | ) |
| | ) |
| Defendants. | ) |

MEMORANDUM OPINION AND ORDER

This matter is before the Court on defendants' Sharon Taylor, Jesse Gregg, Harold Angel, Kevin Hampton, Randy Lee, Misty Hardin Gregg, and Jeffrey Chance ("defendants") motion for summary judgment. [Doc. 79]. The plaintiff filed a response, [Doc. 86], opposing the motion. The matter is ripe for review.

**I. FACTS**

The plaintiff was sentenced to serve four years in the custody of the Tennessee Department of Corrections ("TDOC") for convictions of felony evading arrest and reckless endangerment. [Doc. 87 ¶ 1]. The plaintiff began serving his sentence at the South Central Correctional Facility and was later transferred to the Northeast Correctional Complex ("NECX") where the incident giving rise to this suit occurred. [*Id.* ¶ 2]. At all relevant times, the plaintiff was classified by TDOC as a minimum security inmate. [*Id.* ¶ 3]. The plaintiff was housed in the NECX Annex ("Annex") prior to September 20, 2013. [*Amended Complaint* ¶ 16]. On September 20, 2013, the plaintiff was involved in an interaction or altercation with another inmate while standing in line in the Annex dining facility. [*Id.* ¶ 4].

1

According to the defendants, defendant Misty Hardin Gregg ("Hardin Gregg") offered the plaintiff and the other inmate the opportunity to complete a work sanction in lieu of a disciplinary report. [*Hardin Gregg Depo.* at 18-19]. Defendant Hardin Gregg testified that the plaintiff refused the work sanction and, upon his refusal, she called her supervisor, Captain Henson, who made the decision to send the plaintiff to the compound from the Annex pursuant to TDOC policy. [*Id.* at 19]. Defendant Hardin Gregg completed the disciplinary report. [*Id.*]. The plaintiff testified in his deposition that he did not refuse the work sanction but readily accepted it. [*Raudenbush Depo* at 110]. The plaintiff further testified that his acceptance of the work sanction angered defendant Hardin Gregg and she told him he would be going to the compound. [*Id.* at 111].

While the plaintiff argues in his response to the motion that defendant Hardin Gregg "ordered" and made the decision for him to be sent to the compound, the plaintiff testified in his deposition that prior to defendant Hardin Gregg completing the disciplinary report that she made two or three phone calls in his presence which he believed were to her supervisors. [*Id.* at 112]. The plaintiff further testified that "nobody leaves the annex without [the unit manager's] permission" according to his understanding of TDOC policy. [*Id.* at 114, 115]. According to the plaintiff, defendant Kevin Hampton was the unit manager and the plaintiff went to him and asked him to not send the plaintiff to the compound but defendant Hampton failed to intervene. [*Id.*]. The plaintiff admitted that he did not know if defendant Hampton was responsible for sending him to the compound. [*Id.* at 116].

While housed in the compound, the plaintiff's cellmate was inmate Christian. [Doc. 87 ¶ 9]. On September 24, 2013, the defendant sent a letter to the warden, defendant Sharon Taylor, stating that he faced a potential threat from his cellmate, inmate Christian. [*Id.* ¶ 11]. The

plaintiff testified he sent this letter in a sealed envelope addressed to Warden Taylor through the in-house mail system. [*Raudenbush Depo.* at 121]. The plaintiff testified he sent one prior letter to Warden Taylor in the same manner but had no other evidence of such a letter. [*Id.*]. No other inmate was listed as a threat to the plaintiff in the September 24, 2013 letter to the warden. [Doc. 87 at ¶11]. The letter states that inmate Christian had "robbed" him by stealing some of his belongings in the cell and had shown him a knife "to scare" him but that he "was not scared because my faith is in Christ." [*Id.*]. The plaintiff wanted to be moved to a different unit or pod because he believed the unit he was placed in was a gang unit for violent inmates. [*Id.*]. The same day the letter was written, defendant Taylor wrote at the top of the letter, "Mr. McCracken, Have a member of your team talk to this man—move him if necessary. S. Taylor." [*Id.*].

In the early morning hours of the following day, September 25, 2013, the plaintiff was attacked in his cell by inmate House. [Doc. 87 at ¶ 13]. The plaintiff testified that he believed the attack occurred at 6:00 in the morning or earlier. [*Raudenbush Depo*. at 20]. The plaintiff testified the attack occurred as follows, "Inmate Christian opened the door . . . and let Inmate House in and that's when Inmate House started to assault me while I was still in bed." [*Id.* at 22].

The plaintiff testified that during the time he was housed in the compound prior to the September 25, 2013 attack he informed defendants Chance and Lewis, correctional officers, that he was in fear for his life. [*Id.* at 123]. The plaintiff gave no specific day that he talked with these officers but said that he told the officers he feared for his safety because inmate Christian, his cellmate, had a knife. [*Id.* at 123-24]. The plaintiff testified that defendants Chance and Lewis responded to this notice by performing a cell search "shortly after," or "a day maybe" after he talked to them but no knife was located. [*Id.* at 124-25].

The plaintiff brought suit against defendants Sharon Taylor, Kevin Hampton, Misty Hardin Gregg, Harold Angel, Randy Lee, Jesse Gregg, Officer Chance, and Officer Lewis. The plaintiff alleges violations of his civil rights under Title 42, United States Code § 1983 ("§ 1983") and state law claims for the beating that occurred on September 25, 2013. [Doc. 9]. The Court previously dismissed other defendants relating to a § 1983 claim for allegedly failing to provide medical care. [Docs. 38, 58]. The plaintiff's state law claim for negligence or gross negligence has also been dismissed. [Doc. 58]. The only remaining claims are against the above listed defendants for alleged § 1983 violations, intentional infliction of emotional distress[1], and assault and battery.

## II. STANDARD OF REVIEW

Summary judgment is proper where the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

---

[1] Counts three and four of the amended complaint alleging the "tort of outrage or outrageous conduct" and intentional infliction of emotional distress are alleging the same cause of action. *Doe 1 ex rel Doe 1 v. Roman Catholic Diocese of Nashville*, 154 S.W.2d 22, 31 (Tenn. 2005) ("The tort of intentional infliction of emotional distress, also known as the tort of outrageous conduct, was recognized in Tennessee . . .").

The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To refute such a showing, the non-moving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material factual dispute. *Id.* at 322. A mere scintilla of evidence is not enough. *Anderson*, 477 U.S. at 252; *McClain v. Ontario, Ltd.*, 244 F.3d 797, 800 (6th Cir. 2000). This Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson*, 477 U.S. at 248-49; *Nat'l Satellite Sports*, 253 F.3d at 907. If the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. If this Court concludes that a fair-minded jury could not return a verdict in favor of the non-moving party based on the evidence presented, it may enter a summary judgment. *Anderson*, 477 U.S. at 251-52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

The party opposing a Rule 56 motion may not simply rest on the mere allegations or denials contained in the party's pleadings. *Anderson*, 477 U.S. at 256. Instead, an opposing party must affirmatively present competent evidence sufficient to establish a genuine issue of material fact necessitating the trial of that issue. *Id.* Merely alleging that a factual dispute exists cannot defeat a properly supported motion for summary judgment. *Id.* A genuine issue for trial is not established by evidence that is merely colorable, or by factual disputes that are irrelevant or unnecessary. *Id.* at 248-52.

## III. ANALYSIS

### A. § 1983 Claim

The plaintiff brought suit pursuant to Title 42, United States Code § 1983 for alleged failure to protect him from a threat of serious harm. In order to state a claim under § 1983, a plaintiff must establish that he was deprived of a federal constitutional right by a person acting under color of state law. *Black v. Barberton Citizens Hosp.*, 134 F.3d 1265, 1267 (6th Cir. 1998); *O'Brien v. City of Grand Rapids*, 23 F.3d 990, 995 (6th Cir. 1994); *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir. 1992); *see also Braley v. City of Pontiac*, 906 F.2d 220, 223 (6th Cir. 1990) (stating that "Section 1983 does not itself create any constitutional rights; it creates a right of action for the vindication of constitutional guarantees found elsewhere").

### 1. *Respondeat Superior*

The defendants first argue that they are entitled to summary judgment on the § 1983 claim because they cannot be held liable for § 1983 claims based solely on *respondeat superior* liability. Section 1983 liability "will not be imposed solely on the basis of *respondeat superior*" or the right to control employees. *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). There must be a showing that the "supervisor encouraged the specific incident of misconduct or in some other way directly participated in it." *Id.* At a minimum, the plaintiff is required to show that the supervisory official "at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Id.* (citing *Hays v. Jefferson County*, 668 F.2d 869, 872-74 (6th Cir. 1982)). Furthermore, § 1983 liability must be based on "active unconstitutional behavior and cannot be based upon a 'mere failure to act.'" *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (quoting *Salehpour v. University of Tennessee*, 159 F.3d 199, 206-07 (6th Cir. 1998), cert. denied, 526 U.S. 1115 (1999)).

According to the defendants, the plaintiff has failed to allege any personal, active involvement of defendants Taylor, Hampton, Hardin Gregg, Angel or Lee that would be

sufficient to provide a basis for § 1983 liability. The defendants move the Court to dismiss the § 1983 claim against them. The plaintiff argues that he is not relying on *respondeat superior* liability to hold any defendant liable under § 1983 but instead has alleged personal involvement in the alleged unconstitutional conduct. Each defendant will be addressed individually.

### a. Kevin Hampton

The plaintiff testified that defendant Hampton's allegedly unconstitutional actions consisted of "as unit manager, Mr. Hampton was obligated and responsible over me as an inmate and when I brought an issue to his attention, he ignored it." [*Raudenbush Depo.* at 117]. The plaintiff testified that he told defendant Hampton that he may be sent to the compound and defendant Hampton's response was that 'he'll deal with it when he gets back and he never did." [*Id.* at 114]. The plaintiff argues this failure to act provides the basis for § 1983 liability. [Doc. 86 at 3]. Defendant Hampton cannot be held liable under § 1983 based solely on his supervisory role over defendant Hardin Gregg or "as unit manager" over the inmate.

### b. Sharon Taylor

Regarding defendant Sharon Taylor, the plaintiff argues that she was directly involved in the deprivation of his constitutional rights because she ignored actual knowledge of threats to harm the plaintiff. [Doc. 86 at 4]. The plaintiff argues that defendant Taylor was aware of a potential risk to the plaintiff but acted deliberately indifferent despite the multiple letters and warnings communicated to her. [*Id.*]. The plaintiff further states that defendant Taylor made a handwritten, signed note on the letter he sent her regarding the potential threat prior to the attack by inmate Christian. [*Id.* at 9]. The Court finds the evidence presented is sufficient to find that the plaintiff has based defendant Taylor's § 1983 liability on personal involvement and action, not merely on *respondeat superior* liability.

7

## 2. Failure to State a Claim

The plaintiff alleges that the defendants violated his constitutionally protected right to be free from cruel and unusual punishment pursuant to the Eighth Amendment, as it applies to the states through the Fourteenth Amendment. The Eighth Amendment prohibits the infliction of cruel and unusual punishment of those convicted of crimes. *Wilson v. Seiter*, 501 U.S. 294, 296-97 (citing *Robinson v. California*, 370 U.S. 660, 666 (1962)). Only the "unnecessary and wanton infliction of pain" implicates Eighth Amendment concerns. *Id.* The Constitution "does not mandate comfortable prisons" and only those deprivations that deny the "minimal civilized measure of life's necessities" can form the basis of an Eighth Amendment violation. *Id.* (internal citations omitted). The Eighth Amendment requires that "prison officials must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). This includes protecting prisons from violence at the hands of other prisoners. *Id.* (citing *Cortes-Quinones v. Jimenez-Nettleship*, 842 F.2d 556, 558 (1st Cir. 1988)).

However, not every injury to one prisoner inflicted by another prisoner violates the Eighth Amendment; two requirements must be met. *Id.* First, the prison official's action must be objectively "sufficiently serious" and result in the denial of the "minimal measure of life's necessities." *Id.* (internal citations omitted). Where the inmate is claiming a failure to prevent harm, the inmate must show that under the imposed conditions, he faced a "substantial risk of serious harm." *Id.* (citing *Helling v. McKinney*, 509 U.S. 25, 35 (1993)). Second, the prison official must have a "sufficiently culpable state of mind," of "deliberate indifference." *Id.* (citing *Wilson*, 501 U.S. at 302).

"Deliberate indifference" in the context of alleged Eighth Amendment violations requires "obduracy and wantonness, not inadvertence or error in good faith." *Marsh v. Arn*, 937 F.2d 1056, 1060 (6th Cir. 1991). The deliberate indifference standard imposes the obligation for prison officials to take "reasonable steps to protect inmates from violence at the hands of other inmates." *Knight v. Gill*, 999 F.2d 1020, 1022 (6th Cir. 1993) (citing *Marsh*, 937 F.2d at 1060).

### a. Kevin Hampton

§ 1983 liability requires active, personal involvement in the unconstitutional behavior, which at minimum, must implicitly authorize or approve of a subordinate's conduct. A mere failure to act is insufficient to hold a defendant liable under § 1983. The plaintiff has failed to bring forth any evidence that defendant Hampton knowingly acquiesced or authorized any unconstitutional behavior. The plaintiff's testimony is evidence of only defendant Hampton's alleged failure to act. This failure to act when the plaintiff said he would be moved to the compound is insufficient to sustain § 1983 liability. The plaintiff has provided no evidence of any active, personal involvement by defendant Hampton or evidence that he authorized or acquiesced to allegedly unconstitutional behavior by a subordinate.

### b. Misty Hardin Gregg

The plaintiff argues that defendant Hardin Gregg was personally involved in the deprivation of his constitutional rights by "demand[ing] a work sanction" and stating that the plaintiff would be sent to the compound even upon accepting the work sanction. [Doc. 86 at 3-4]. "Her demand that Mr. Raudenbush was going to the compound was obviously for punishment because Mr. Raudenbush was advised by Ms. Gregg that he was going to the compound only when she got angered as a result of Mr. Raudenbush's choice of words when he accepted the work sanction." [*Id.*]. The parties' evidence on this interaction presents a

disagreement regarding the facts surrounding this interaction between defendant Hardin Gregg and the plaintiff. However, to survive summary judgment, the disputed fact cannot be irrelevant or unnecessary to the claims. The plaintiff has failed to argue or show how defendant Hardin Gregg's conduct is material to his § 1983 claims.

Although this interaction, albeit somewhat disputed, is personal involvement between defendant Hardin Gregg and the plaintiff, the plaintiff has failed to argue that defendant Hardin Gregg deprived him of any constitutional protection. Even assuming that defendant Hardin "demanded" a work sanction instead of offering one and ordered the plaintiff to the compound, the plaintiff has failed to present any evidence or argument that this conduct deprived the defendant of a constitutionally protected right. Although the plaintiff does not specifically make this argument in his response to the motion, he appears to imply that defendant Hardin Gregg violated his constitutional rights by sending him from the annex to the compound because the compound was a more dangerous section of the prison where he should not have been housed.

The plaintiff testified in his deposition that Unit 7, where he was placed in the compound, was a "gang unit" and he should not have been sent there because he faced increased risk as a non-gang member. First, the plaintiff has not argued or presented any evidence that defendant Hardin Gregg knew which particular unit on the compound that the defendant would be sent to. Second, the plaintiff has presented no admissible evidence that Unit 7 was a "gang unit" that exposed him in particular to risk. Instead, the plaintiff testified only that he heard, based on rumor and hearsay, that it was a gang unit. This hearsay statement is insufficient evidence to show that the plaintiff faced any risk of increased harm to his person. While the plaintiff may have subjectively felt that he was in more danger in the compound than in the annex, his subjective feeling is insufficient to meet the standard for § 1983 liability for failure to protect

him.  Furthermore, the defendants have presented unrefuted evidence that Unit 7 was not a "gang unit" or security threat group and had not been designated as such for over a year and a half before plaintiff was transferred to that unit.  [Doc. 80-7; *McCracken Depo.* at 27-28; 41-42].

The Supreme Court has recognized that "the Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." *Wilkinson v. Austin,* 545 U.S. 209, 221 (2005) (citing *Meachum v. Fano,* 427 U.S. 215 (1976)).  However, a liberty interest in avoiding particular conditions of confinement may arise from state policies or regulations, subject to certain considerations set forth in *Sandin v. Conner*.  *Id.* (citing *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).  The Fourteenth Amendment confers a "limited" liberty interest in freedom from restraint imposing "atypical and significant hardship" on the inmate in relation to ordinary incidents in prison or that would affect the duration of a prison sentence.  *See Sandin v. Conner*, 515 U.S. 472, 484 (1995).  Administrative segregation has been held not to involve an "atypical and significant hardship" implicating a protected liberty interest.  *Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998) (holding it was not "atypical" for an inmate to be in segregation for two and one half years while it was investigated to determine if he was involved in a prison riot).

Here, the plaintiff can show, at most, that defendant Hardin Gregg sent the plaintiff from the annex to the compound, another section of the same prison, pending investigation based on a reported disciplinary infraction.  This action, even if the plaintiff believes it was in response to the way he addressed defendant Hardin Gregg, does not implicate an "atypical and significant hardship" more than the ordinary incidents of prison life.  This transfer from one portion of the prison to another did not extend the duration of the plaintiff's incarceration and did not last an excessively long period of time.  Additionally, the plaintiff has failed to present any evidence

that defendant Hardin Gregg would have been aware that the plaintiff faced any increased threat of specific harm than other similarly situated prisoners sent to the compound. The defendants provided evidence that Unit 7 was an "open population" unit housing offenders of many different classifications, including other non-gang, minimum security inmates. The plaintiff has failed to provide any evidence that defendant Hardin Gregg had any personal involvement in the deprivation of a constitutional right. The § 1983 claim against her is DISMISSED.

### c. Sharon Taylor

The plaintiff argues that defendant Sharon Taylor deliberately ignored letters sent to her providing notice that he faced a risk of serious harm at the hands of other inmates and thereby failed to protect him from the September 25, 2013 early-morning attack. The plaintiff testified that he sent at least two letters between September 20, 2013, and September 24, 2013, to defendant Taylor, as Warden of NECX, informing her of a potential threat to his safety. The only letter submitted as evidence before the Court is the letter discussed above dated September 24, 2013, the day before the early morning attack of September 25, 2013. The plaintiff testified that the letters were put "in the in-house mail directly to the warden" in a "sealed envelope." [*Raudenbush Depo.* at 121]. The plaintiff further testified that he understood that no one would see the contents of the letters until they reached defendant Taylor. [*Id.*]. When discussing the September 24, 2013 letter, which informs defendant Taylor that inmate Christian had stolen from the plaintiff and showed the plaintiff a knife, the plaintiff testified that he did not know "when it got to the warden. This [letter] probably got to the warden after everything happened." [*Id.* at 141]. Even when discussing the other letters the plaintiff claims he sent to the warden informing her of a threat to his safety, the plaintiff testified that "in-house mail, sometimes it takes days to

12

get to where it's supposed to go and . . . then it may sit there in the mail room until it's delivered by an inmate . . . ." [*Id.*].

First, the plaintiff has failed to provide any evidence that defendant Taylor actually received any letters from the plaintiff other than the September 24, 2013 letter. Without proof that defendant Taylor received any letter informing her of a potential threat, the plaintiff cannot show that defendant Taylor was "deliberately indifferent" to his safety. From the plaintiff's own testimony he states that he is unsure if defendant Taylor received any letters other than the September 24, 2013 letter or if she received the letters prior to the September 25, 2013 morning attack. Defendant Taylor cannot be deliberately indifferent to a threat she is unaware of and the plaintiff presented no evidence defendant Taylor was aware of any prior letters.

Second, regarding the September 24, 2013 letter, it is clear that defendant Taylor received and read that letter at some point on September 24, 2013. Defendant Taylor wrote on the top of the letter that Mr. McCracken, another officer, should talk to the plaintiff about the contents of the letter and "move him if necessary." While it is clear that defendant Taylor received and read this letter, it is equally clear that she was taking reasonable steps to ensure the plaintiff's safety. Defendant Taylor instructed an officer to investigate the contents of the letter, which the Court notes focus only on inmate Christian robbing the plaintiff and showing him a knife, and to move the plaintiff if the investigation warrants such an action. The evidence in the record is clear and unrefuted that defendant Taylor was not "deliberately indifferent" to the plaintiff's safety upon receiving this letter. Indeed, the evidence shows the opposite, that defendant Taylor was taking reasonable steps to protect the plaintiff if needed. The fact that the plaintiff was injured by an inmate in the early morning hours the following day before the plaintiff could be talked to or moved, while unfortunate, does not impose liability on defendant Taylor.

13

### d. Officer Lewis, Officer Chance, and Lieutenant Gregg

The plaintiff alleges that Officers Lewis and Chance and Lieutenant Gregg were deliberately indifferent to threats made by inmates Christian and House.

#### i. Inmate Christian

Regarding the alleged threat posed by inmate Christian, the plaintiff argues that he informed Officers Chance and Lewis that inmate Christian had "threatened him with a knife and told me that it was a gang cell" and that inmate Christian had a knife. [*Raudenbush Depo* at 124]. The plaintiff further testified that the officers responded that they would conduct a cell search to try to find the knife and that within a day or so, the officers conducted such a cell search but no knife was discovered. The Eighth Amendment requires prison officials to take "reasonable steps" to protect inmates. Officers Lewis and Chance were informed that inmate Christian may have a knife, they reasonably responded by conducting a cell search to look for such a knife but none was found. The Court finds that as a matter of law, Officers Chance and Lewis took reasonable steps to protect the plaintiff from any potential harm from inmate Christian when informed that inmate Christian may possess a knife.

The plaintiff testified that Officer Chance would have known of a potential threat to him because he had been in possession of letters addressed to the Warden and grievances. However, the plaintiff has provided no evidence that grievances were ever filed regarding inmates Christian or House, nor did he provide any testimony regarding what the grievances allegedly contained or when they were filed. The plaintiff further testified that "I think I may have said something to him [Officer Chance]. If I didn't say it to him, I said it to other COs." [*Id.* at 166]. Finally, the plaintiff admits that Officer Chance "did not see the content of the letters" addressed to the warden or he does not know if Officer Chance saw the content of the letters. [*Id.* at 168].

14

The plaintiff has failed to provide any evidence that Officer Chance actually knew of a threat to his safety and deliberately failed to protect him based on his possession of sealed letters addressed to the Warden or grievance notices. The plaintiff only testifies that he "may have told him" but provides no testimony where he definitely states he informed Officer Chance of a specific, significant threat or that Officer Chance would have been aware of the contents of any letters.

### ii. Inmate House

In his response to the motion for summary judgment, the plaintiff argues that he informed these officers on multiple occasions that inmate House had attempted to access the plaintiff's cell, threatened the plaintiff, and assaulted him on September 24, 2013. [Doc. 86 at 6-7]. The only proof of this notice to Officer Lewis and Lieutenant Gregg come from the plaintiff's own deposition testimony. The plaintiff has submitted no letters or grievance forms given to Officer Lewis or Lieutenant Gregg concerning inmates House or Christian.

The plaintiff's argues that he informed Officer Lewis and Lieutenant Gregg about potential danger from inmate House but the officers failed to protect him. The Court notes that the plaintiff's testimony is wildly inconsistent throughout his deposition. In the span of his deposition, the plaintiff changed his testimony regarding interactions with inmate House to at least four separate statements. At first, the plaintiff had "never" had any interaction or altercation with inmate House prior to the September 25, 2013 attack; second, inmate House attempted to access his cell once but was unsuccessful; third, inmate House attempted to access his cell on three separate occasions; and fourth, inmate House successfully accessed his cell and

physically assaulted him the evening of September 24, 2013, the day before the attack at issue here.[2]

The plaintiff argues that the defendants ignored a threat to his safety after he had one or some interactions with inmate House. [*Id.* at 136-38]. The plaintiff provided no date of when the alleged interaction or interactions with inmate House occurred other than to say it was in the days he was housed in the compound. When asked who he informed about any threat from inmate House, the plaintiff testified that he told the "CO that was on duty." [*Id.*]. The plaintiff did not specify any particular CO or individual defendant that he told about the alleged interactions. [*Id.* at 136-37]. This alleged report to "the CO" or "the CO on duty" is insufficient to establish § 1983 liability for any of the named defendants. These statements do not provide any evidence that a particular defendant knew of and deliberately ignored a significant threat as required under § 1983.

The plaintiff finally argues that he informed Officer Lewis and Lieutenant Gregg of an alleged assault by inmate House and they failed to act. Defendant Gregg presented evidence that he only learned of an attack on the plaintiff when he arrived to work on the morning of September 25 and did not have any memory or knowledge of the plaintiff being attacked prior to

---

[2] At the start of the deposition, when asked if the plaintiff "had any disagreements, arguments, altercations with Inmate House prior to September 25, 2013," the day of the attack at issue here, the plaintiff plainly responded, "No." [*Raudenbush Depo.* at 30]. The plaintiff then confirmed that he had "never" had any altercations, disagreements, or arguments with inmate House, including verbal altercations, prior to the September 25, 2013 attack. [*Id.* at 31]. The plaintiff further testified that "the only time he was a threat to me was when he physically attacked me" on September 25, 2013. [*Id.*]. One hundred pages later in his deposition when asked if the plaintiff at any time told anyone inmate House was a threat to him, the plaintiff responded, "No, 'cause (sic) he wasn't a threat until he—he assaulted me when he came in the room." [*Id.* at 136]. When asked to confirm that he was unaware that inmate House was a threat to him prior to the early morning of September 25, 2013, the plaintiff then responded that "Prior to that I think he—he came into the room or he was coming towards me and I pushed the door and then I got out where the CO could see me and he just stood there, so there was one other time he actually tried to engage me." [*Id.*]. The plaintiff then testified that "there were other attempts where Inmate House tried to access [his] cell. There wasn't just one. There were actually I think three altogether." [*Id.* at 140]. The plaintiff then testified that "according to the compliant, that's correct," that inmate House had actually accessed his cell on the evening of September 24, 2013, and physically assaulted him. [*Id.*].

coming to work that day. [*Gregg Depo.* at 28-29]. The only evidence of a notification to defendants Lewis and Gregg comes from the plaintiff's complaint in the following exchange:

> Q. All right. And also in paragraph 25 [of the complaint] you claim - -
> A. Uh-huh.
> Q. - -that you told Captain Gregg, Defendant Gregg - -
> A. Uh-huh.
> Q. - - specifically about Inmate Christian and Inmate House.
> A. Uh-huh.
> Q. Is that correct?
> A. That's correct.
> Q. So it's your testimony that you told Captain Gregg - -
> A. Uh-huh.
> Q. - - that an inmate assaulted you and he did what? Did he do anything?
> A. Let me look here in the - - yeah. In this paragraph [of the complaint] here it says "Plaintiff immediately reported the assault to Defendant Lewis. Plaintiff also told Defendant Gregg of the theft, extortion, and the assault by Inmate House and Christian against the Plaintiff."

[*Id.* at 142-43]. The entirety of the plaintiff's evidence against defendants Gregg and Lewis regarding inmate House consists of the plaintiff reading a paragraph from his complaint and stating "that's correct." The plaintiff provided no additional testimony regarding how or when he informed the officers of a specific threat to his safety. No other evidence in the record supports this allegation made in the complaint. Furthermore, the plaintiff merely cursorily affirmed the allegation in his deposition by reading it verbatim into the record. The plaintiff testified in his deposition on multiple occasions that he had no altercation or interaction with inmate House prior to September 25, 2013; furthermore, the plaintiff did not put any mention of a threat from inmate House in his letter to the warden on September 24, 2013. Finally, except for when he is quoting directly from the complaint's allegations, the plaintiff provided no testimony that he informed defendants Lewis or Gregg about a threat from inmate House. His testimony earlier in the same deposition clearly states he had no interaction with, and therefore

17

could not have felt threatened by, inmate House prior to the September 25, 2013 attack.[3] This mere affirmation of the complaint allegation is insufficient to raise a colorable claim that he informed these defendants as to a threat by inmate House and that they deliberately failed to protect him. The defendants' motion for summary judgment as to the § 1983 claim is GRANTED.

### e. Harold Angel and Randy Lee

The plaintiff concedes that that there is "no evidence available to him concerning the direct involvement" of defendant Harold Angel or defendant Randy Lee. [Doc. 86 at 4]. Furthermore, a review of the record indicates there are no factual allegations relating to Angel or Lee for which to hold them liable for the remaining state law claims. Therefore, the complaint against those two defendants is DISMISSED.

### 3. Intentional Infliction of Emotional Distress

To state a claim for intentional infliction of emotional distress, also known as outrageous conduct, the plaintiff must show that the conduct at issue is (1) intentional or reckless; (2) outrageous; and (3) resulted in a serious mental injury. *Doe 1 ex rel Doe 1 v. Roman Catholic Diocese of Nashville*, 154 S.W.2d 22, 31 (Tenn. 2005). Intent or recklessness requires a "significantly higher burden" than mere negligence. *Id.* at 39 (citing *Christensen v. Superior Court*, 820 P.2d 181, 202-04 (Cal. 1991)). Recklessness requires the defendant to be aware of but consciously disregard a substantial and unjustifiable risk, which would be a gross deviation

---

[3] A party may not create a factual issue by filing an affidavit opposing a motion for summary judgment which contradicts his earlier deposition testimony. *Reid v. Sears, Roebuck and Co.*, 790 F.2d 453, 460 (6th Cir. 1986). This rule prohibits a party from creating a "sham fact issue." *See Aerel, S.R.L. v. PCC Airfoils, L.L.C.*, 488 F.3d 899, 908-09 (6th Cir. 2006). The same principle should apply in this case. The plaintiff may not create an issue of fact by presenting directly contradictory testimony throughout his deposition with no explanation or justification for why his testimony is in direct contradiction. After a thorough review of the plaintiff's entire deposition, the plaintiff gave no indications that he was ever confused by any question, never attempted to explain why his testimony was entirely contradictory regarding his interactions with inmate House or how and when he informed correctional officers regarding his perceived threat.

from the standard of care exercised by a normal person. *Id.* (citing *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 (Tenn. 1992)). The second element requiring that the conduct be "so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* at 39 (internal quotations omitted). The plaintiff fails to present any conduct that could be considered outrageous as to "go beyond all bounds of decency" or would be "intolerable in a civilized society." As discussed above, the plaintiff's evidence, which consists of his inconsistent deposition testimony, fails to show that any named defendant intended to cause him harm or consciously disregarded a substantial and unjustifiable risk. The defendant's actions of failing to protect the plaintiff, even taken in the light most favorable to the plaintiff, establish nothing more than mere negligence. The claim for intentional infliction of emotional distress, or the tort of outrageous conduct, is DISMISSED.

### 4. Assault and Battery

In Tennessee, an assault is defined as "any act tending to do corporal injury to another, accompanied with such circumstances as denote at the time an intention, coupled with the present ability, of using actual violence against the person." *Thompson v. Williamson Cnty., Tenn.*, 965 F. Supp. 1026, 1037 (M.D. Tenn. 1997) (citing *Huffman v. State*, 200 Tenn. 487 (1956)). To constitute an assault, there must be some overt act or physical movement which causes the plaintiff to believe physical harm is imminent. *Baker v. Moreland*, 1989 WL 89758, at *5 (Tenn. Ct. App. Aug. 9, 1989). A battery is "any intentional, unlawful and harmful (or offensive) contact by one person with the person of another." *Raines v. Shoney's, Inc.*, 909 F. Supp. 1070, 1083 (E.D. Tenn. 1995) (citing T.P.I. Civil § 8.02 (App'x 16)).

The plaintiff presented no evidence of an "overt act or physical movement" by any of the defendants which would cause the plaintiff to believe physical harm was "imminent." In fact,

the only acts complained of by the plaintiff were a failure to protect him from a physical assault by another inmate four days after he was moved to the compound. There is no evidence in the record to show that any action taken by a named defendant caused the plaintiff to believe physical harm was imminent. Furthermore, no evidence in the record provides any indication that any named defendants intended to cause fear or apprehension on the part of the plaintiff. Further, the record does not provide any evidence that any of the named defendants were present during the attack on September 25, 2013. If the defendants were not present during the attack, it is impossible for any of the named defendants to have touched the plaintiff in any unlawful or harmful manner to constitute a battery. The plaintiff's claims for assault and battery are hereby DISMISSED.

### 5. Eleventh Amendment

The plaintiff, in response to the motion for summary judgment, concedes that his claims against the defendants in their official capacities must be dismissed because the Eleventh Amendment bars claims against state officials in their official capacity. [Doc. 86 at 10]. The complaint alleging claims against the defendants in their official capacities is DISMISSED.

### 6. Miscellaneous Motions

The defendants' "Motion to Ascertain Status of Summary Judgment", [Doc. 90], is DENIED as moot. The defendants' motion to dismiss for lack of prosecution, [Doc. 91], is DENIED as moot.

So ordered.

ENTER:

s/J. RONNIE GREER<br>
UNITED STATES DISTRICT JUDGE